UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. JULIE COLBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION |
| | ) No. 07-11488-WGY |
| ASSURANT EMPLOYEE BENEFITS; | ) |
| FORTIS BENEFITS INSURANCE | ) |
| COMPANY; MANAGEMENT COMPANY FOR | ) |
| MERRIMACK ANESTHESIA ASSOCIATES | ) |
| LONG TERM DISABILITY PLAN; | ) |
| UNION SECURITY INSURANCE COMPANY | ) |
| & MANAGEMENT COMPANY FOR | ) |
| MERRIMACK ANESTHESIA ASSOCIATES | ) |
| LONG TERM DISABILITY PLAN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

MEMORANDUM

YOUNG, D.J.                                    October 12, 2011

I.   **INTRODUCTION**

This is an action under the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  Dr.
Julie Colby ("Dr. Colby") filed suit against the defendants,
Assurant Employee Benefits, Fortis Benefits Insurance Company,
Management Company for Merrimack Anesthesia Associates Long Term
Disability Plan, and Union Security Insurance Company and
Management Company for Merrimack Anesthesia Associates Long Term
Disability Plan (collectively "USIC"), to recover long-term
disability benefits ("LTD benefits") allegedly denied to her by

USIC in violation of 29 U.S.C. § 1132(a)(1)(B), as well as attorneys' fees and costs.

In 2004, Dr. Colby, working as an anesthesiologist, began using Fentanyl, a powerful opioid that she administered to patients, as a means of coping with severe back pain caused by a herniated disc and degenerative disc disease.  Dr. Colby ultimately became addicted to the drug.  After her coworkers discovered her addiction, Dr. Colby stopped working and voluntarily agreed not to practice medicine for six months.  Her medical license was later suspended indefinitely.  She enrolled in an inpatient substance abuse recovery program, and USIC provided her with LTD benefits under her policy ("the Plan") for the duration of her rehabilitation.  Upon her discharge, USIC terminated Dr. Colby's benefits, claiming that she no longer had symptoms of active substance abuse.  USIC justified the termination on the basis that "the potential for relapse [into substance abuse] is not the same as a current disability." Admin. R. at US001957.[1]  In other words, USIC categorically excluded the risk of drug abuse relapse from qualifying

---

[1]  Unless otherwise indicated, all citations are to the administrative record, prepared by USIC.  The pages in that record are identified by the prefix "US" and the Court has adopted the same convention.  The pagination of the record for Colby v. Assurant Employee Benefits ("Colby I"), 603 F. Supp. 2d 223 (D. Mass. 2009), has no correlation to that of the record in this litigation and, as such, citations in Colby I refer only to the record as it stood at that point.

impairments rendering an individual eligible for benefits under the Plan.  After twice unsuccessfully appealing USIC's determination and challenging its interpretation of the Plan, Dr. Colby initiated proceedings in this Court in 2007, claiming that USIC's termination of her benefits was arbitrary and capricious.

The parties filed cross motions for summary judgment and agreed to resolve the dispute as a case stated.  ECF Nos. 15, 20. This Court held that USIC had acted in an arbitrary and capricious manner, and remanded the case to USIC with instruction to consider Dr. Colby's risk of drug abuse relapse as a long-term disability if the risk was found to be sufficiently high.  USIC again denied Dr. Colby's claim for relief and Dr. Colby appealed twice further, submitting additional evidence regarding her risk of drug abuse relapse.  USIC denied both appeals, maintaining that the risk of drug abuse relapse was not a qualifying disability under the Plan.  USIC also concluded that Dr. Colby's condition could be mitigated by a reasonable accommodation, precluding the need for LTD benefits.

Dr. Colby instituted the present proceedings in 2009, reopening the administratively closed case.  Both parties again have filed motions for summary judgment on the record and agreed to resolve the dispute as a case stated.  "When deciding a case stated, a court draws such inferences as are reasonable to resolve the case, rather than drawing all inferences against each

moving party as it would when evaluating cross-motions for summary judgment." <u>Dickerson</u> v. <u>Prudential Life Ins. Co. of Am.</u>, 574 F. Supp. 2d 239, 241 (D. Mass. 2008) (citations omitted) (internal quotation marks omitted); <u>see</u> <u>Bunch</u> v. <u>W.R. Grace & Co.</u>, 555 F.3d 1, 3 n.4 (1st Cir. 2009).

## II.  FACTS

The facts of the case prior to 2009 were presented in a more thorough fashion in <u>Colby</u> v. <u>Assurant Employee Benefits</u> ("<u>Colby I</u>"), 603 F. Supp. 2d 223 (D. Mass. 2009).  The facts in this memorandum are slightly abridged, but contain the relevant history of the case up to the present.

### A.   Dr. Colby's History of Back Issues, Substance Abuse, and Treatment

Dr. Colby became a partner at Merrimack Valley Anesthesia Associates in 1988 and worked as a staff anesthesiologist at the Anna Jacques Hospital in Newburyport, Massachusetts.  Admin. R. at US001405.  Dr. Colby worked approximately sixty to ninety hours per week and was on call overnight two to three times per week.  <u>Id.</u>

Dr. Colby began to experience back pain and numbness in her leg in the summer of 2000.  <u>Id.</u> at US001406.  She was diagnosed with a herniated disc and underwent a disectomy in September 2001.  <u>Id.</u> at US001407.  Her symptoms continued, however, and Dr. Colby was diagnosed with degenerative disc disease.  <u>Id.</u>  She

began to self-medicate using Fentanyl, a powerful opioid administered during surgeries, taking the leftover narcotics from the operating room.  Id. at US001408.  Within a short time period, Dr. Colby became addicted to and dependent on Fentanyl. Id. at US001325.  In July 2004, Dr. Colby was discovered asleep on a table in the hall of the hospital.  Id.  She submitted to a requested drug screen, tested positive for Fentanyl, and voluntarily agreed not to practice medicine for six months.[2]  Id. At the recommendation of Massachusetts Physician's Health Services, Dr. Colby checked herself into the Talbott Recovery Campus in Atlanta, Georgia ("Talbott"), a facility that specializes in treating doctors with substance abuse problems. Id. at US002019-31.  She remained a patient at Talbott from August 16, 2004, until November 20, 2004.  Id.

In addition to opioid dependence, staff physicians at Talbott diagnosed Dr. Colby with dysthymic disorder, a history of major depressive disorder, and compulsive and avoidant personality traits.  Id. at US002019-24.  Dr. Colby was also provided with instruction on treating her back pain, which she rated a six out of ten on the Mankoski pain scale when she checked into Talbott.  Id. at US002019-24.  Dr. Colby engaged in a rigorous exercise program for two to three hours per day while

---

[2] In 2005, Dr. Colby's medical license was suspended indefinitely.  Admin. R. at US922.

at Talbott.  By the time of her discharge, Dr. Colby's back pain
had reduced to a one or two out of ten on the Mankoski pain
scale.  Id.  Dr. Colby's mental health also improved, due to
daily group meetings at which she discussed her addiction.  Id.
at US002020.  Eventually, she received permission to stop taking
the antidepressant drug, Zoloft, which she had been taking since
2003.  Id.

Her discharge summary stated that she "explored the idea of
returning to school and finding an area of medicine where she
would not be exposed to her drug of choice."  Id. at US002023.
Michael Wilkerson, M.D. ("Dr. Wilkerson"), the supervising
physician at her intake and discharge examinations, nonetheless
recommended "that she not return to the practice of medicine for
six months to allow her to continue to work on her recovery and
stabilize her home situation."  Id. at US002024.

**B.   Dr. Colby's Application for LTD Benefits and USIC's Subsequent Termination**

Dr. Colby initially applied for LTD benefits under the Plan
on September 24, 2004, while she was a patient at Tablott.  Id.
at US002270.  Relying on an Attending Physician Statement and a
Supplementary Attending Physician Report, both filed by Dr.
Wilkerson, USIC granted disability benefits to Dr. Colby for the
period of November 8, 2004, to November 20, 2004, ceasing upon
Dr. Colby's discharge from Talbott.  Id. at US002236.

6

After granting Dr. Colby LTD benefits for this twelve-day period, USIC conducted a more thorough analysis of Dr. Colby's disability.  USIC gathered records from a number of doctors who had treated Dr. Colby and asked three consultants to opine on whether Dr. Colby qualified for LTD benefits based on these records.  See id. at US920-22, US1386-92, US1393-94.

Karen Sherwood, M.D. ("Dr. Sherwood"), a staff vocational consultant for USIC, reviewed Dr. Colby's record to determine her occupation and material duties ("Sherwood Review").  Id. at US1393-94.  Without elaborating further, Dr. Sherwood concluded that Dr. Colby's job fell "within the occupation of Physician," rather than within the occupation of anesthesiologist.  Id. at US1393.

Allen J. Parmet, M.D. ("Dr. Parmet"), conducted an independent review at the request of USIC to determine whether Dr. Colby suffered from any "physical limitations" ("Parmet Review").  Id. at US920-22.  Dr. Parmet first noted that Dr. Colby faced a practical barrier to returning to employment since her license had been suspended indefinitely.  Id. at US922.  He also stated that although she suffered from degenerative disc disease, the condition "pre-existed the current events" and "did not impose any limitations."  Id.  Dr. Parmet concluded that no physical limitations existed to prevent Dr. Colby from returning to work.  Id.

7

Mike Jones, Ph.D. ("Dr. Jones"), a staff psychologist at USIC, conducted a Behavioral Health Services Assessment of Dr. Colby to determine whether Dr. Colby suffered from any psychological limitations ("Jones Review").  Id. at US1386-92. Dr. Jones noted Dr. Colby's myriad psychological issues, but stated that Dr. Colby's discharge summary from Talbott did not indicate that any of these diagnosed mental illnesses prevented Dr. Colby from returning to work.  Id. at US1391.  Dr. Jones saw no indication in the records of direct treatment for mental health issues following Dr. Colby's discharge from Talbott, but recommended that additional records be obtained in order to render a more informed determination.  Id.

On July 26, 2005, Dr. Colby received a notice letter stating that USIC was denying her claim for LTD benefits beginning November 20, 2004.  Id. at US000562-63.  Classifying her occupation as a "physician," as opposed to an anesthesiologist, and methodically listing and analyzing each of her conditions, the letter stated that none of Dr. Colby's conditions prevented her return to work.  Id.  Consequently, USIC denied LTD benefits for the period following Dr. Colby's discharge from Talbott.  Id.

### C.   Dr. Colby's First Appeal and USIC's Subsequent Denial

On January 19, 2006, Dr. Colby appealed USIC's decision to terminate her LTD benefits.  Id. at US001315.  Dr. Colby submitted additional medical records, including a treatment

8

summary from her therapist, Patricia Dell-Ross ("Dell-Ross"), a licensed social worker.[3]  Id. at US001893.  Dr. Colby also submitted an independent vocational evaluation, id. at US001696-702, as well as an independent medical examination report by a doctor specializing in addiction treatment, id. at US001688-92.

Dell-Ross submitted a letter she wrote for the purposes of Dr. Colby's appeal, emphasizing the danger of relapse inherent in Dr. Colby's return to work, specifically in light of the interrelation between Dr. Colby's dysthymia and back pain.  Id. at US001893.  Dell-Ross concluded that Dr. Colby was in a period of early recovery from opioid dependence and could not return to work because "[h]er access to opiates . . . combined with the usual and unusual stressors of everyday life and work would make her relapse almost inevitable."  Id.

James T. Parker ("Parker"), a licensed rehabilitation counselor and certified vocational expert, conducted an independent vocational review of Dr. Colby ("Parker Review"). Id. at US001696-702.  First, Parker classified Dr. Colby as an

---

[3] Dr. Colby began therapy sessions with Dell-Ross in October 2003.  Id. at US001665.  With the exception of the time that Dr. Colby spent at Talbott, Dr. Colby met with Dell-Ross at least once per month.  Id. at US000859-69, US001665-73, US001883-85 (collectively, "Dell-Ross Review").  Dell-Ross's session notes indicated that Dr. Colby was very concerned about returning to work, so much so that they discussed the issue at nearly every meeting.  Id.  The notes indicated that Dr. Colby was particularly concerned about how her return to work would make her vulnerable to drug abuse relapse.  Id.

anesthesiologist, rather than a physician, _id._ at US001700, stating that USIC's use of the term "physician" was "overly broad and inappropriately group[ed] distinct occupations into a single occupation."   _Id._  He also took issue with Dr. Sherwood's review, stating that because USIC does not publish its occupational definition methodology, it is of "unknown validity and reliability."   _Id._  Finally, Parker concluded that Dr. Colby's conditions prevented her from performing "the executive level requirements . . . of the occupation of anesthesiologist."   _Id._

Alan Wartenberg, M.D. ("Dr. Wartenberg"), an addiction specialist, conducted an independent, in-person examination of Dr. Colby ("Wartenberg Review").   _Id._ at US001688-92.  Based on a his review, Dr. Wartenberg concluded that "[i]t is [his] belief, to a reasonable degree of medical certainty, that Dr. Colby is at high risk of relapse," and that she should not return to any occupation where she could access anesthetic opioids.  _Id._ at US001691.  He also stated that if Dr. Colby were to return to practice as an anesthesiologist, her risk of relapse would be even greater.  _Id._

USIC also had two additional assessments conducted, a Behavioral Health Services Assessment by Patricia Neubauer, Ph.D. ("Dr. Neubauer"), a staff psychologist at USIC, _id._ at US1379-85, and a Clinical Services Review by Nina C. Smith, M.D. ("Dr. Smith"), a consulting doctor, _id._ at US386-89.

Dr. Neubauer conducted an analysis of each of Dr. Colby's conditions and concluded that none prevented Dr. Colby from returning to the occupation of anesthesiologist or physician ("Neubauer Review").  Id. at US1379-85.  As to Dr. Colby's issues specifically with "opioid related addictive disorder," Dr. Neubauer asserted that "[a] diagnosis of drug addiction does not indicate impairment.  Generally, claimants who are recovering and able to maintain sobriety with community support . . . should be able to resume activities of daily living including work."  Id. While Dr. Colby's exposure to opioids at the workplace creates the potential for relapse, Dr. Neubauer opined that this potential is not the same as a current disability and does not prevent Dr. Colby from performing the duties of her occupation. Id. at US1382.

Dr. Smith conducted a review of Dr. Colby's records to determine whether her degenerative disc disease prevented her return to work ("Smith Review").  Id. at US386-89.  Dr. Smith found that "the medical evidence does not support any physical limitations and restrictions from her own occupation."  Id. at US388.  Dr. Smith also noted that Dr. Colby's degenerative disc disease seemed to respond well to exercise and anti-inflammatory medication.  Id.

On July 6, 2006, USIC denied Dr. Colby's first appeal.  Id. at US001954.  The denial letter classified Dr. Colby as a physician whose duties included, but were not limited to:

> (1) Ability to work on a full-time basis, as defined by the policy, if the worker was a full-time employee. (2) Review and evaluate medical records. (3) Diagnose medical condition of the patient. (4) Express an opinion on or prescribe, diagnostic measures and treatment. (5) Record and/or report on facts and findings.

Id. at US001956.  With respect to her physical conditions, the denial letter stated that the "pain from [Dr. Colby's] back is not in and of itself a limiting condition," and as such, her degenerative disc disease did not rise to the level of a disability that would merit LTD benefits under the Plan.  Id. With respect to Dr. Colby's mental conditions, including her opioid addiction, the denial letter stated:

> [I]t appears her claim is based primarily on her and her provider's plan for her to avoid her specialty as an anesthesiologist due to her risk of relapse rather than the current presence of drug use or symptoms and conditions that would preclude working in her occupation. While Dr. Colby may choose to avoid that specialty, the potential for relapse is not the same as a current disability.

Id. at US001957.  Having found that "there is no evidence to suggest that Dr. Colby was unable to perform the material duties of her regular occupation as of November 20, 2004," USIC denied Dr. Colby's appeal.  Id. at US001958.

**D.   Dr. Colby's Second Appeal and USIC's Subsequent Denial**

After her first appeal was denied, Dr. Colby filed a second administrative appeal.  _Id._ at US001896-99.  In support of her position, Dr. Colby submitted a letter from her attorney, Mala M. Rafik ("Rafik"), critiquing Dr. Smith and Dr. Neubauer's assessments, as well as a supplemental letter from Dell-Ross addressing USIC's assessment of Dr. Colby's claim.  _Id._ at US001315-53.  Specifically, Rafik's letter on behalf of Dr. Colby outlined the manner in which USIC's assessment mischaracterized the relationship between Dr. Colby's back pain and the stress of returning to work, her access to opioids, and her risk of relapse.  _Id._ at US001316.  Dell-Ross's report discussed Dr. Colby's vulnerability to relapse in light of the confluence of her past drug dependence, depressive symptoms, and lack of sufficient emotional supports.  _Id._ at US001337.

On April 5, 2007, USIC upheld its previous denial of Dr. Colby's claim for LTD benefits.  _Id._ at US001861.  USIC determined that Dr. Colby did not meet the Plan's definition of disabled and therefore was not entitled to continued benefits.  _Id._ at US001865.  The denial letter stated: "The Committee noted that while Dr. Colby may choose to avoid the specialty of anesthesiology, because of her exposure to opiates, the risk for relapse is not the same as a current disability."  _Id._  Following

13

receipt of the denial letter, Dr. Colby filed an action in federal district court.

### E.   Colby I

In Colby I, the Court reasoned that the operative question of the case was whether USIC acted arbitrarily and capriciously or abused its discretion by categorically excluding the risk of drug abuse relapse from qualifying impairments under the Plan. 603 F. Supp. 2d at 235.  The Court held that neither the Plan nor relevant legal doctrine allowed such a categorical exclusion of the risk of drug abuse relapse, and therefore USIC's decision to terminate Dr. Colby's LTD benefits was arbitrary and capricious. Id. at 240-45.

In reaching this result, the Court looked to the plain language of the Plan, which did not distinguish between physical and mental disabilities.  The Court held that "an individual who becomes disabled because of a mental illness is equally entitled to benefits as an individual who becomes disabled as a result of a physical illness."  Id. at 240-41.  Indeed, USIC granted Dr. Colby LTD benefits while she was undergoing drug addiction treatment at Talbott, indicating that mental illness is considered a disability under the Plan.  Id. at 241.

Moreover, USIC acknowledged that if an individual was currently able to perform the duties of her occupation, but doing so would greatly increase the risk of a complication or relapse

14

of a physical ailment, that individual would qualify for LTD benefits under the Plan.  Id.  For example, USIC conceded that an "individual suffering from a . . . coronary disease, who could literally perform the tasks required of his occupation but whose return to work would create a dangerously high risk of a heart attack, would be covered by the Plan and receive disability benefits."  Id.  This admission by USIC is paramount, since there is no meaningful difference in the Plan between physical and mental ailments.  Therefore, this Court held that the plan administrator ("Administrator") was precluded, as matter of law, from denying LTD benefits for the sole reason that Dr. Colby suffered from a drug addiction rather than a physical ailment subject to relapse.  The case was remanded to USIC for reconsideration of Dr. Colby's claim under an interpretation of the Plan consistent with the Court's decision.  Id. at 245-46.

### F.   USIC's Denial of LTD Benefits Post-Colby I

USIC had an additional assessment conducted prior to its decision in the remanded matter.  Marcus J. Goldman, M.D. ("Dr. Goldman"), prepared an independent review of Dr. Colby's records ("Goldman Review").  Admin. R. at US000975-83.  Dr. Goldman concluded that Dr. Colby's psychiatric functionality was limited through December 2005 due to continuing drug addiction-related issues.  Id. at US000982.  Dr. Goldman supported this conclusion by referencing Dr. Colby's May 2005 Driving Under the Influence

15

charge and Dell-Ross's session notes. Id. at US000981-82. Dr. Goldman stated that nothing in the records, however, supported a conclusion of major affective anxiety disorder or drug addiction past December 2005. Id. Dr. Goldman also noted that there were no narrative progress notes on Dr. Colby past mid-2005. Id. at US000981.

On June 24, 2009, USIC again denied Dr. Colby's claim. Id. at US000932. USIC "respectfully disagree[d] with the Court's conclusion," and stated that "risk of a potential future disability is not considered a current disability for which benefits are available." Id. at US000934-35. USIC asserted that while, "as a recovering drug addict, [Dr. Colby] may have been at risk of relapsing into active addiction sometime in the future, that possibility alone does not constitute a disability under the plain language in the [Plan], and her claim must be denied." Id. at US000935.

USIC raised a separate ground for its denial based on the Occupation Test requirements under the Plan. Id. at US000936-37. Under the Occupation Test, an individual only qualifies for LTD benefits if "after 36 months of disability . . . a [condition] prevent[s] [the individual] from performing at least one of the material duties of each gainful occupation for which [his or her] education, training, and experience qualifies [that individual]." Id. at US000006, US000933 (emphasis in original). In other

words, as of August 10, 2007, if Dr. Colby could perform the
tasks of any gainful occupation for which she is qualified, then
she would not be "disabled" under the Plan.  Id. at US000936.
USIC relied on the Sherwood Review, which asserted that there
were many jobs for which Dr. Colby was qualified that would not
place her in the proximity of opioids.  Id. at US000950-58.

### G.   Dr. Colby's First Appeal Post-Colby I

On December 18, 2009, Dr. Colby appealed USIC's denial,
submitting a lengthy and detailed letter.  Id. at US000804-30.
Dr. Colby asserted that, in light of this Court's order in Colby
I, USIC had no legal basis to deny her LTD benefits on the ground
that the risk of drug abuse relapse did not qualify as a
disability.  Id. at US000804-09.  Dr. Colby submitted a medical
review conducted by William Land, M.D. ("Dr. Land"), an
independent medical consultant with significant experience in
substance abuse issues ("Land Review").  Id. at US000809-16.
After a full review of the record, Dr. Land diagnosed Dr. Colby
with opioid dependence, post-traumatic stress disorder, major
depressive disorders, and dysthymia.  Id. at US000836-40.  Dr.
Land noted the severity of Dr. Colby's risk of relapse, stating
that "there are multiple significant factors that placed Dr.
Colby at significant and substantial risk of relapse from
November, 2004 until December of 2007."  Id. at US000844.  Dr.
Land also reviewed Dell-Ross's session notes and highlighted

inconsistencies between the Dell-Ross Review and the Goldman review. Id. at US000848-54. Dr. Land concluded that "Dr. Colby's risk of relapse prevented her from performing at least one, if not more, of these material duties from atleast [sic] November, 2004 through December, 2007." Id. at US000856.

### H.   USIC's Denial of Dr. Colby's First Post-Colby I Appeal

On March 25, 2010, USIC denied Dr. Colby's appeal and declined to grant her LTD benefits for the period after her discharge from Talbott. Id. at US000744. USIC disagreed with this Court's order in Colby I, stating: "We respectfully assert that [the Court] was mistaken in [its] opinion that our company makes a distinction between physical and mental conditions in applying policy terms to risk of relapse." Id. at US000749. USIC also denied Dr. Colby's claim on the ground that Dr. Colby could perform the material duties of her occupation with a "reasonable accommodation." Id. at US000751. This was the first instance where USIC discussed the possibility of a reasonable accommodation for Dr. Colby. USIC relied on a review by Milton Jay, M.D. ("Dr. Jay"), a consulting neuropsychologist and addiction specialist ("Jay Review"). Id. at US000751. Dr. Jay's report raised the viability of a "shadow," an employee of the hospital assigned to watch Dr. Colby when she is in the presence of narcotics, as a reasonable accommodation under the Plan. Id. at US000769. Dr. Jay diagnosed Dr. Colby with a "moderate

severity relapse risk profile," id. at US000720, but concluded

that Dr. Colby was not disabled due to her risk of relapse, and

that even if she were, a shadow would constitute a reasonable

accommodation that would disqualify her from receiving LTD

benefits under the Plan.  Id. at US000752.

## I.   Dr. Colby's Second Appeal Post-Colby I

On September 21, 2010, Dr. Colby appealed USIC's second

post-Colby I denial.  Id. at US000643-53.  Dr. Colby's letter

reiterated her previous argument, asserting that USIC's

determinations are inconsistent with this Court's holding in

Colby I that risk of drug abuse relapse ought not be

categorically excluded from qualifying disabilities under the

Plan.  Id. at US000648.  In order to address the reasonable

accommodation ground raised by USIC in its denial, Dr. Colby

initiated a reexamination by Dr. Land, as well as an independent

vocational evaluation by John E. Sargent ("Sargent"), a board

certified rehabilitation counselor and clinical mental health

counselor.  Id. at US000643-44, US000700.

Dr. Land reviewed Dr. Jay's recommendation for a reasonable

work accommodation.  Dr. Land stated that "based on [his]

clinical experience working in several hospitals and from [his]

forensic training, [he does] not believe that [a shadow] is a

practical or realistic accommodation for Dr. Colby."  Id. at

US000657.  Sargent also reviewed Dr. Jay's recommendation for a

reasonable work accommodation and concluded that a "shadowing
clinician is not a reasonable accommodation for a physician,"
based on the steep "accommodation expense" of such an
arrangement.  Id. at US000705, US000710 (internal quotation marks
omitted).  In addition, Sargent observed, and Dr. Colby argued in
her appeal, that there is no record that USIC evaluated the cost
of the proposed accommodation or contacted Dr. Colby's prior
employer to determine if such an accommodation would be
considered.  Id. at US000648, US000711.

**J.   USIC's Denial of Dr. Colby's Second Post-Colby I Appeal**

On November 2, 2010, USIC denied Dr. Colby's appeal.  Id. at
US000634.  USIC, again, "respectfully disagree[d] with the
Court's finding."  Id. at US000639.  USIC asserted that, even if
the risk of drug abuse relapse constituted a disability, USIC had
identified a reasonable accommodation that would disqualify Dr.
Colby from receiving LTD benefits under the Plan.  Id. at
US000639.  The denial letter concluded that after her discharge
on November 20, 2004, Dr. Colby did not meet the applicable test
for disability.  Id. at US000640.  After this final denial, Dr.
Colby reopened the administratively closed record and initiated
the present action before this Court.

## III. RULINGS OF LAW

### A.    Standard of Review

Dr. Colby and USIC submitted cross motions for summary judgment based on the administrative record and have agreed to resolve the dispute as a case stated.  As such, rather than drawing all inferences against each moving party, the Court is empowered to resolve both issues of law and disputed issues of material fact.  Brotherhood of Locomotive Eng'rs v. Springfield Terminal Ry. Co., 210 F.3d 18, 31 (1st Cir. 2000); see W.R. Grace & Co., 555 F.3d at 3 n.4.

### 1.    Arbitrary and Capricious

In an ERISA case, "trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002).  Where, as here, an ERISA disability plan "grants the plan administrator discretionary authority in the determination of eligibility for benefits, the administrator's decision must be upheld unless it is 'arbitrary, capricious, or an abuse of discretion.'"  Wright v. R.R. Donnelley & Sons. Co. Grp. Benefits Plan, 402 F.3d 67, 74 (1st Cir. 2005) (quoting Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183 (1st Cir. 1998)).

21

"The operative inquiry under arbitrary, capricious or abuse of discretion review is 'whether the aggregate evidence . . . could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits.'" Wright, 402 F.3d at 74 (quoting Twomey v. Delta Airlines Pilots Pension Plan, 328 F.3d 27, 31 (1st Cir. 2003)). This Court must uphold the Administrator's decision if it was "reasoned and supported by substantial evidence." Stamp v. Metropolitan Life Ins. Co., 531 F.3d 84, 87 (1st Cir. 2008) (citation omitted) (internal quotation marks omitted). "Evidence is substantial if it is reasonably sufficient to support a conclusion." Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004). Further, "[e]vidence contrary to an administrator's decision does not make the decision unreasonable, provided substantial evidence supports the decision." Wright, 402 F.3d at 74 (citing Gannon, 360 F.3d at 213). Finally, review is limited to the evidence contained in the administrative record. Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003).

## 2.   Metropolitan Life Insurance Co. v. Glenn

In 2008, the United States Supreme Court altered the "arbitrary and capricious" standard as it applies to ERISA cases. See Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). Prior to Glenn, in the First Circuit, "the fact that . . . the

plan administrator [would] have to pay [a] claim out of its own assets [did] not change the arbitrary and capricious standard of review." Denmark v. Liberty Life Assurance Co. of Bos., 481 F.3d 16, 29 (1st Cir. 2007) (citations omitted) (internal brackets omitted), reh'g granted, opinion withdrawn, 530 F.3d 1020 (1st Cir. 2008) (directing the parties to re-brief the court in light of Glenn). The Supreme Court took a contrary position in Glenn, holding that where an ERISA plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket . . . this dual role creates a[n inherent] conflict of interest." Glenn, 554 U.S. at 108. In the event of such a conflict, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits, and [] the significance of the factor will depend on the circumstances of the particular case." Id. Where a conflict of interest exists, "any one factor [including the conflict of interest] will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." Id. at 116. A court should engage in such analysis even where there is no overt evidence suggesting that the administrator's decision was affected by the conflict. Id. at 118. The Supreme Court specified, however, that the Glenn decision does not change the

standard of review, and that deference is still due the plan administrator.  Id. at 115.

In the instant case, USIC is both the insurer and the administrator of the Plan.  Therefore, the following analysis applies the arbitrary and capricious standard of review while taking into account the directive of Glenn with respect to USIC's inherent conflict of interest.

### B.   USIC's Arbitrary and Capricious Determination After Colby I

As this Court held in Colby I, 603 F. Supp. 2d at 244, USIC may not categorically exclude the risk of drug abuse relapse as a qualifying disability under the Plan.  USIC's continued misinterpretation of the Plan renders the Administrator's denial of Dr. Colby's claim arbitrary and capricious.  As it did in Colby I, Dr. Colby's "claim for benefits hinges entirely on her primary argument: USIC acted arbitrarily and capriciously by excluding categorically her risk of relapse into opioid abuse from its analysis of her claim."  Id. at 237.  All other arguments were disposed of, and as such, this directive is the sole issue presently before the Court.  Dr. Colby prevailed on the argument in Colby I, and the Court continues to hold that categorically excluding the risk of drug abuse relapse is an unreasonable interpretation of the Plan.

## 1.   USIC's Exclusion of Risk of Relapse

Under the Occupation Test in the Plan, an individual is
entitled to LTD benefits if "[d]uring the first 36 months of a
period of disability (including the qualifying period), an
injury, sickness, or pregnancy requires that [the claimant] be
under the regular care and attendance of a doctor, and prevents
[the claimant] from performing at least one of the material
duties of [his or her] regular occupation."  Admin. R. at
US000006.

This Court in Colby I unequivocally held that the Plan does
not permit USIC to categorically exclude the risk of drug abuse
relapse from its disability analysis.  603 F. Supp. 2d at 241.
The Court explained that because the Plan may not, as matter of
law, distinguish between physical and mental impairments, and
because the Plan would, as USIC admitted, cover an analogous
"risk of relapse" situation in the case of a physical condition,[4]

---

[4] USIC argues in its opposition brief and in its motion to
reconsider the February 23, 2009, Order, that it never conceded
this point.  Def.'s Mem. Opp'n Pl.'s Mot. J. R. ("Def.'s Mem.
Opp'n") 3-5, ECF No. 61; Def.'s Mem. Opp'n Pl.'s Mot. Att'ys Fees
Costs Cross-Mot. Recons. Pursuant Rule 60, ECF No. 36.  While the
Court acknowledges that USIC did not expressly state that a risk
of relapse of a physical ailment would be covered, it certainly
impliedly averred this in its Cross-Motion for Judgment on the
Record of June 20, 2008.  Def.'s Mem. Cross Mot. J. R. Opp'n
Pl.'s Mot. J. R. ("Def.'s Mem. Cross Mot.") 15, ECF No. 21.  If
USIC's policy was never to provide LTD benefits for a relapse of
any ailment, be it mental or physical, USIC would have raised
this much stronger argument in its denial of Dr. Colby's
benefits.  Instead, USIC relied on Stanford v. Continental
Casualty Co., 514 F.3d 354 (4th Cir. 2008), to distinguish

such an exclusion for mental ailments is, by definition, arbitrary.  Id. at 241.  As stated in Colby I, "[f]abricating an exception out of the whole cloth that contravenes existing terms and interpretations of the Plan is the very definition of arbitrary and capricious."  Id.

In Colby I, USIC cited case law from other circuits to support its interpretation of the Plan.  In particular, USIC relied on the Fourth Circuit's holding in Stanford v. Continental Casualty Co., 514 F.3d 354 (4th Cir. 2008), abrogated on other grounds by Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 355 (4th Cir. 2008).  See Colby I, 603 F. Supp. 2d at 242; Def.'s Mem. Cross Mot. J. R. Opp'n Pl.'s Mot. J. R. ("Def.'s Mem. Cross Mot.") 15, ECF No. 21.  The plaintiff's legal argument in Stanford is the same as Dr. Colby's position: if a person with a heart condition qualifies for LTD benefits because of his severe risk of a heart attack if he returns to a high-stress job, then a recovering addict should recover benefits if her employment exposes her to a high risk of drug abuse relapse.

---

between the risk of relapse of physical ailments and mental ailments, and focused on the nature of drug abuse relapse as a "choice," as opposed to a non-volitional heart attack.  Def.'s Mem. Opp'n 15.  Only after reading this Court's opinion in Colby I did USIC change its argument and disavow LTD benefits for all "risk of relapse" claimants in light of this Court's reasoning. As such, the Court holds USIC's position to be inconsistent and unavailing.

The <u>Stanford</u> court rejected the plaintiff's argument, reasoning that a high-stress environment causes a cardiac event, whereas a drug-filled environment only encourages relapse.   514 F.3d at 358.   The <u>Stanford</u> court asserted that "[w]hether [the recovering addict] succumbs to that temptation remains his choice; the heart-attack prone [individual] has no such choice." <u>Id.</u>   This Court found such a distinction objectionable, noting that the reasoning "defies the nature of drug addiction" and "ignores the common language in LTD plans treating physical and mental disabilities on equal footing." <u>Colby I</u>, 603 F. Supp. 2d at 242.   This Court instead was persuaded by Judge Wilkinson's dissenting opinion in <u>Stanford</u>:

> [The majority's reasoning necessarily] rest[s] on moral considerations of choice and temptation on the one hand, and medical considerations of physical inability on the other, neither of which are to be found in the language of a Plan that puts addiction squarely on all fours with other impairments.   The moral and medical choices are not this court's to make.   They belong to those who bargained for the Plan—and who have something at stake in it.

514 F.3d at 363 (Wilkinson, J., dissenting).

The Court in <u>Colby I</u> asserted that it is a "moralistic error" to distinguish the risk of drug abuse relapse for a recovering addict from a physical ailment.   603 F. Supp. 2d at 242.   The majority's reasoning in <u>Stanford</u> presupposes choice in the realm of addiction relapse and "unreasonably and illogically distinguish[es] between the future risks inherent in physical and mental sicknesses." <u>Id.</u> at 243.   The Court also noted the

inherent danger that USIC's position poses to the health and
welfare of the claimants and, when the claimant is a health
provider as in Dr. Colby's case, the claimant's patients.  Id.
"Forcing [a claimant] to relapse into drug addiction or lose
[her] benefits would . . . thwart the very purpose for which
disability plans exist: to help people overcome medical adversity
if possible, and otherwise to cope with it."  Id. (quoting
Stanford, 514 F.3d at 362).

      Instead, this Court chose to follow "more persuasive" case
law that recognizes that a risk of drug abuse relapse could
satisfy a LTD plan's definition of disability if the probability
of relapse was "sufficiently high."  603 F. Supp. 2d at 243
(discussing Kufner v. Jefferson Pilot Fin. Ins. Co., 595 F. Supp.
2d 785, 797 (W.D. Mich. 2009) (holding that an insurance
company's denial of disability benefits was arbitrary and
capricious because it disregarded the "extensive medical
evidence" of the drug-addicted doctor's risk of relapse); Royal
Maccabees Life Ins. Co. v. Parker, No. 98 C 50422, 2001 WL
1110489, at *7 (N.D. Ill. Sept. 20, 2001), vacated by settlement,
2003 WL 22019779 (N.D. Ill. Aug. 21, 2003) (determining that a
risk of drug abuse relapse constituted a disability where five
medical professionals recommended that the doctor "not return to
the practice of emergency medicine because of his chemical
dependency coupled with his chronic depression")).

## 2.    Intervening Case Law Since <u>Colby I</u>

In its motion for summary judgment, USIC cites two ERISA
cases that were decided after <u>Colby I</u>, arguing that each renders
deficient the <u>Colby I</u> holding.  Def.'s Mem. Mot. Summ. J.
("Def.'s Mem. Summ. J.") 16, ECF No. 52.  USIC first cites
<u>Conkright</u> v. <u>Frommert</u>, 130 S. Ct. 1640 (2010), an ERISA case in
which the Supreme Court held that a plan administrator's
interpretation of a policy is entitled to deference, even upon
review of a post-remand determination.  USIC also cites <u>Hinkle ex
rel. Estate of Hinkle</u> v. <u>Assurant, Inc.</u>, 390 F. App'x 105 (3d
Cir. 2010), in which the Third Circuit asserted that where there
is a circuit split on the reasonableness of a particular
interpretation of a policy, an administrator's interpretation of
that provision cannot be arbitrary or capricious.  Neither
decision disturbs the holding in <u>Colby I</u> or affects the action
presently before this Court.

### a.    <u>Conkright</u> v. <u>Frommert</u>

In <u>Conkright</u>, employees appealed a plan administrator's
allegedly improper calculation of their retirement benefits.  130
S. Ct. at 1645.  The district court upheld the determination on
summary judgment, but the Second Circuit reversed, holding that
the plan administrator's interpretation of the policy was
unreasonable and remanding the matter to the plan administrator
to recalculate the benefits under proper methodology.  <u>Id.</u>  The

employees again appealed the administrator's decision, and the
district court declined to apply a deferential standard of review
to the remanded determination.   Id.

The Supreme Court held that the district court should have
applied a deferential standard of review to the plan
administrator's interpretation, pursuant to Firestone Tire &
Rubber Co. v. Bruch, 489 U.S. 101 (1989), and Glenn, 554 U.S.
105.   Id. at 1646.   The Supreme Court stated that a "one-strike-
and-you're-out" approach to deferential review has no basis in
the precedential authority or the purposes of ERISA.   Id. at
1646-47.   Rather, a plan administrator's interpretation of a
policy is entitled to deference whether or not it is the
administrator's "first efforts to construe the Plan."   Id. at
1643.

USIC cites Conkright for the general proposition that the
Administrator's interpretation of the Plan is entitled to
deference.   See Def.'s Mem. Summ. J. 11-12, 14, 16.   This Court
does not disagree with the Conkright proposition, but it also
does not find it to be relevant to the issue at hand.   In
reviewing the Administrator's interpretation of the Plan, this
Court applied a deferential standard of review both in Colby I
and in the present action, disturbing the Administrator's
determination only where it was held to be arbitrary, capricious,
or an abuse of discretion.   Colby I, 603 F. Supp. 2d at 235; see

30

supra at Section III.A.  This Court's analysis is therefore
entirely consistent with the Supreme Court's ruling in Conkright.

As the Supreme Court asserted, "[a]pplying a deferential
standard of review does not mean that the plan administrator will
prevail on the merits.  It means only that the plan
administrator's interpretation of the plan 'will not be disturbed
if reasonable.'"  Conkright, 130 S. Ct. at 1651 (citing
Firestone, 489 U.S. at 111).  As this Court held in Colby I, the
Administrator's interpretation of the Plan, categorically
excluding the risk of drug abuse relapse as a qualifying
disability, was not reasonable and therefore not entitled to
deference.  603 F. Supp. 2d at 246.

> b. **Hinkle ex rel. Estate of Hinkle v. Assurant,
> Inc.**

In Hinkle, an unpublished opinion, the Third Circuit
affirmed that a plan administrator's interpretation of
"accidental" death under the policy was not arbitrary and
capricious.  390 F. App'x at 108.  In doing so, the court
affirmed the district court's determination that "where the
courts of appeals are in disagreement on an issue, a decision one
way or another cannot be regarded as arbitrary and capricious."
Id.  USIC cites this language in its motion for summary judgment,
arguing that because Fourth Circuit case law, which USIC relies
on, is at odds with case law from other districts, which this
Court found persuasive, this Court is precluded from holding the

31

Administrator's decision to be arbitrary or capricious.  Def.'s
Mem. Summ. J. 16.

     As this Court stated in Colby I, whether the risk of drug
abuse relapse is a qualifying disability under a plan that does
not otherwise exclude it is a matter of first impression in the
First Circuit.  603 F. Supp. 2d at 241.  Moreover, this Court is
only bound by a decision of the First Circuit or the Supreme
Court.  See United States v. Sunia, 643 F. Supp. 2d 51, 74
(D.D.C. 2009) ("The federal courts spread across the country owe
respect to each other's efforts and should strive to avoid
conflicts, but each has an obligation to engage independently in
reasoned analysis."); Landsman & Funk, P.C. v. Skinder-Strauss
Assocs., 636 F. Supp. 2d 359, 363 (D.N.J. 2009) (asserting that
the district court was only bound by decisions of its own
circuit, not decisions of other circuits), vacated on other
grounds, 640 F.3d 72 (3d Cir. 2011).  Therefore, this Court was
well within its authority in Colby I to decline to follow the
Fourth Circuit's decision in Stanford, under which the
Administrator's exclusion of the risk of drug abuse relapse would
be considered proper.

     Similarly, this Court is now entitled to, and hereby does,
disagree with and decline to follow the Third Circuit's decision
in Hinkle, a decision not selected for publication in the Federal
Reporter, but rather only printed in the Federal Appendix.  The

32

<u>Hinkle</u> court's holding would effectively bind the hands of
district courts to apply the arbitrary and capricious standard.
The <u>Hinkle</u> reasoning creates an anomalous result: where two
circuits have disagreed on the reasonableness of an
administrator's interpretation of a policy, and a district court
sits in a different circuit which has not yet spoken on the
issue, the district court could not hold the administrator's
interpretation to be anything other than reasonable.  This result
wrongfully extends the precedential weight of circuit court
decisions outside their proper boundaries.  Therefore, this Court
rejects the holding of <u>Hinkle</u> and will review the Administrator's
interpretation of the Plan under the deferential standard of
review as provided in <u>Firestone</u>, 489 U.S. 101, and as modified in
<u>Glenn</u>, 554 U.S. 105.[5]

   C.   **USIC's Disregard for This Court's Mandate in <u>Colby I</u>**

   This Court was explicit in its holding in <u>Colby I</u> that if a
risk of drug abuse relapse would render Dr. Colby unable to
perform at least one of the material duties of her occupation,

---

   [5] It bears mentioning that <u>Colby I</u> was also determined on
the independent ground that the Administrator's interpretation of
the Plan was arbitrary and capricious based on <u>the terms of the
Plan itself</u>, rather than the relevant legal doctrine.  603 F.
Supp. 2d at 240-42.  Thus, even if this Court found <u>Hinkle</u>
persuasive, which it does not, <u>Colby I</u> would stand on that
independent holding.

then she must be considered disabled under the Plan.[6]  USIC

flouted this directive in its reconsideration of Dr. Colby's

claim.  USIC stated in its initial post-<u>Colby I</u> denial letter

that "even though . . . [Dr. Colby] may have been at risk of

relapsing into active addiction sometime in the future, that

possibility alone does not constitute a disability under the

plain language in the [Plan]."  Admin. R. at US000935.  USIC

reaffirmed its position in its subsequent denials of Dr. Colby's

appeals, stating in the first denial that "[r]isk of relapse

represents a possibility, but not a disability," <u>id.</u> at US000752,

and in the second denial that "[t]he mere risk for potential of

relapse into either a drug-related condition or any other

conditions, however, does not meet the definition of disability

contained in the applicable policy," <u>id.</u> at US000638-39.

USIC's position directly contravenes this Court's holding in

<u>Colby I</u> that it was an error as matter of law for USIC to

categorically exclude the risk of drug abuse relapse as a

qualifying disability under the Plan.  603 F. Supp. 2d at 246.

As such, the Administrator acted arbitrarily and capriciously in

continuing to unreasonably interpret the Plan, and in

disregarding the order of this Court.

_____

[6] As this Court will discuss <u>infra</u> at Section III.D, Dr.
Colby is only entitled to LTD benefits for the first thirty-six
months of her disability, as to which the "regular occupation"
standard of the Occupation Test applies.  Admin. R. at US000006.

Moreover, the Administrator failed to engage in a factual analysis, as was directed by this Court in Colby I, id. at 247, of whether Dr. Colby's risk of relapse was sufficiently high such that she could not perform at least one material duty of her occupation.  Had USIC performed this analysis and concluded, based on the evidence in the record, that Dr. Colby's risk of drug abuse relapse did not meet this threshold, this factual determination would have been deferentially reviewed by the Court.[7]  See Stamp v. Metropolitan Life Ins. Co., 531 F.3d 84, 87 (1st Cir. 2008) (holding that a court should "uphold the denial of benefits if the plan administrator's decision was reasoned and supported by substantial evidence") (citation omitted) (internal quotation marks omitted).

---

[7] As this Court stated in Colby I, the record contained "substantial evidence that, viewing Dr. Colby's constellation of health issues collectively, her return to full time work as a physician posed a dangerously high risk of her relapsing into active abuse of Fentanyl or other opioids." 603 F. Supp. 2d at 238; see also Dell-Ross Review, Admin. R. at US001893; Wartenberg Review, id. at US001691; Parker Review, id. at US001701.  USIC's consultants all concurred that Dr. Colby suffered from opioid dependence, and each of USIC's termination or denial letters acknowledged Dr. Colby's drug addiction.  See Land Review, Admin. R. at US000844 ("[T]here are multiple significant factors that placed Dr. Colby at significant and substantial risk of relapse from November, 2004 until December of 2007."); Jay Review, id. at US000720 (diagnosing Dr. Colby with a "moderate severity relapse risk profile"); see also Parmet Review, id. at US920-22; Neubauer Review, id. at US1379-85; Jones Review, id. at US1386-92. Nevertheless, this Court would have upheld a determination that the risk of drug abuse relapse was not sufficiently high had the Administrator performed such an evidentiary review and had the decision been supported by "substantial evidence." Stamp v. Metropolitan Life Ins. Co., 531 F.3d 84. 87 (1st Cir. 2008).

Since USIC explicitly excluded the risk of drug abuse
relapse from its analysis, however, the Court will not now
perform an evidentiary review of the Administrator's decision to
deny Dr. Colby's claim.  Such a review is moot.[8]  The
Administrator's determination was arbitrary and capricious for
the very reason that it ignored this Court's mandate as to what
constitutes an unreasonable interpretation of the Plan,
regardless of how the Administrator applied the facts to its
erroneous framework of the decision.[9]

---

[8] At oral argument on November 17, 2008, and again in its
opposition brief to Dr. Colby's motion for judgment on the
record, USIC cited the First Circuit decision in Boardman v.
Prudential Insurance Co. of America, 337 F.3d 9 (1st Cir. 2003),
arguing that Dr. Colby has the burden of providing objective
medical findings that indicate limitations precluding her from
performing her occupation.  Tr. Case Stated Hr'g 7, ECF No. 56;
Def.'s Mem. Opp'n 14.  Presumably, USIC is attempting to defend
its pre-Colby I decision on an evidentiary basis, claiming that
it was not granted due deference.  USIC's argument is
unpersuasive, however, and does not require this Court to discuss
the substantive merits of the medical evidence in the record.
    The Colby I Court concluded that USIC made an error of law
by categorically excluding Dr. Colby's condition from the Plan.
This Court did not grant USIC any evidentiary deference because
it was clear from USIC's interpretation of "disability" that no
amount of medical testimony to the contrary was going to change
USIC's determination.  A ruling that USIC had acted contrary to
law is different from an evaluation of a determination based on
conflicting evidence, and, as such, Boardman is not instructive
in the present matter.

[9] This Court anticipates that USIC may argue on appeal that
this portion of the holding is effectively stripping the
Administrator of its discretion, the exact behavior eschewed by
the Supreme Court in Conkright.  This is not the case.  Baldly
ignoring a judicial order renders moot any evidentiary analysis
an administrator would portend to undergo, and therefore this
Court need not conduct an evidentiary review.

D.    Reasonable Accommodation

After this Court decided Colby I, USIC denied Dr. Colby's remanded claim on the additional ground that she was not "disabled" under the Plan because she could have performed the material aspects of her job with a reasonable accommodation. Admin. R. at US000751.  This was the first time in the proceedings that USIC raised the issue of reasonable accommodation for Dr. Colby.  It did so citing the Occupation Test which states that if "[the claimant] can perform the material duties of [his or her] regular occupation with reasonable accommodation(s), [the claimant] will not be considered disabled."  Id. at US000933.  USIC proposed an accommodation by which the hospital would assign a health care professional to "shadow" Dr. Colby throughout her workday during those times when she potentially would have access to narcotics. Id. at US000751.

USIC's post hoc suggestion that a "shadow" would have been a reasonable accommodation, disqualifying Dr. Colby from receiving LTD benefits, contravenes the guidelines set forth in USIC's "Master List of Rules, Guidelines, Protocols" ("Master List"). Id. at US002280-87.  USIC's Master List defines "reasonable accommodation" as "any modification(s) to the worksite, the job, or employment practices, which would allow you to perform the material duties of the occupation and which would not create an

37

undue hardship for the employer." Id. at US002340.  The Master

List provides a formal procedure for USIC's determination of

whether a reasonable accommodation is available for a particular

claimant.  Once USIC identifies a potential accommodation, USIC

calls both the claimant and the policyholder, i.e., the employer,

"to discuss the applicability and availability" of the

accommodation.  Id. at US002341.  USIC's Vocational Services

staff then makes a determination as to the "effectiveness each

accommodation would have in enabling performance of the essential

functions of the position."  Id. at US002342.  Once the

determination is made, USIC makes a follow-up call to the

claimant and the policyholder "to facilitate the selection of an

accommodation that meets both of their needs."  Id.

    USIC, in its own administrative guidelines, thus explicitly

assumes the burden of working constructively with the claimant

and the employer to find an appropriate accommodation.[10]  Id. at

US002342.  Yet there is no evidence in the record that USIC made

any attempt to do so after Dr. Colby was discharged from

---

[10] In its opposition brief, USIC argues that the burden is
on Dr. Colby to show that no reasonable accommodation was
possible, and implies she ought have sought an accommodation
independently.  Def.'s Mem. Opp'n 12.  USIC cites the language of
the Occupation Test, which is ambiguous, at best, in placing such
a burden on Dr. Colby.  See Admin. R. at US000006.  Any such
ambiguity is clarified by the explicit language in the Master
Plan, in which USIC lays out procedures for proposing and
implementing an accommodation.  Id. at US002341-43.  USIC cannot
therefore shift a burden to Dr. Colby that it has itself assumed.

rehabilitation in November 2004. Had a reasonable accommodation been suggested by USIC in the applicable time period, this would be a valid ground upon which to deny Dr. Colby's claim for LTD benefits. In the absence of any evidence that USIC's internal procedures were followed, however, USIC is precluded from raising this argument.

**D. The "Any Gainful Occupation" Standard After Thirty-Six Months**

The Plan's requirements under the "Occupation Test" change after thirty-six months: "[i]f, after 36 months of a period of disability, [the claimant] can perform a gainful occupation for which [his or her] education, training, and experience qualifies [the claimant], with reasonable accommodation(s), [he or she] will not be considered disabled." Id. at US000006 (emphasis in original omitted). In other words, while in the first thirty-six months of a claimant's disability the claimant must be able to perform the material duties of his or her "regular occupation," after that period, the standard broadens to each "gainful occupation" for which the claimant is qualified. Id.

There are many occupations for which Dr. Colby's education, training, and experience qualifies her that do not place her in close proximity to opioids. USIC, in its brief suggests several of these possible occupations, see Def.'s Mem. Opp'n 11, and this Court agrees with this assessment. Therefore, under the "any

39

gainful occupation" standard, Dr. Colby's eligibility for LTD benefits shall be capped at thirty-six months.

### E.   Remedy

#### 1.   Retroactive Reinstatement of Benefits

As the First Circuit has established, "[o]nce a court finds that an administrator has acted arbitrarily and capriciously . . . the court can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits." Cook v. Liberty Life Assurance Co. of Bos., 320 F.3d 11, 24 (1st Cir. 2003).  District courts have considerable discretion in deciding whether to remand the matter or reinstate benefits retroactively.

In Colby I, this Court held that remand was appropriate "[b]ecause USIC categorically excluded risk of relapse as a basis for disability," and thus "USIC never conducted the appropriate analysis."  603 F. Supp. 2d at 246.  This Court has now given USIC the opportunity and instruction to conduct the appropriate analysis as to Dr. Colby's risk of drug abuse relapse, and USIC has flagrantly refused to do so.  A remand is less appropriate in circumstances where "a denial was particularly flagrant." Radford Trust v. First Unum Life Ins. Co. of Am., 321 F. Supp. 2d 226, 250 (D. Mass. 2004) (citing Cook, 320 F.3d at 24), rev'd in part on other grounds, 491 F.3d 21 (1st Cir. 2007).  In light of USIC's failure to abide by, as well as its continued resistance

to, the Order in <u>Colby I</u>, this Court now awards Dr. Colby
retroactive LTD benefits for the initial thirty-six month period
of her disability, less any benefits already received during her
tenure at Talbott, pursuant to the LTD provisions in the Plan.

### 2.  Attorneys' Fees

It is also within the Court's discretion to grant Dr. Colby,
as the prevailing party, attorneys' fees and costs.  29 U.S.C.
§ 1132(g)(1).  The First Circuit has rejected a presumption in
favor of awarding fees to a prevailing plaintiff in ERISA
benefits cases, and has instead create a five-factor test to
guide district courts in these matters.  <u>See</u> <u>Cottrill</u> v. <u>Sparrow,
Johnson, & Ursillo, Inc.</u>, 100 F.3d 220, 226 (1st Cir. 1996); <u>Gray</u>
v. <u>New England Tel. & Tel. Co.</u>, 792 F.2d 251, 257-58 (1st Cir.
1986).

The non-exhaustive list of factors to be considered are as
follows: (1) the degree of culpability or bad faith attributable
to the losing party; (2) the depth of the losing party's pocket,
i.e., his or her capacity to pay an award; (3) the extent, if at
all, to which such an award would deter other persons acting
under similar circumstances; (4) the benefit, if any, that the
successful suit confers on plan participants or beneficiaries
generally; and (5) the relative merit of the parties' positions.
<u>Cottrill</u>, 100 F.3d at 225.

Under the first factor, USIC has conducted itself in bad faith, summarily denying Dr. Colby benefits pursuant to an unreasonable interpretation of the Plan.  The second factor is of negligible importance, for although USIC certainly has the financial resources to pay Dr. Colby's attorneys' fees and costs, "the capacity to pay, by itself, does not justify an award." Cottrill, 100 F.3d at 227 (explaining that the second factor was intended primarily to limit the award of attorneys' fees against parties who could not afford them, not to encourage awards against the well-off).

The third factor, combined with USIC's bad faith under the first factor, most strongly justifies the award of fees in this case.  Requiring USIC to pay fees will deter other LTD plan administrators from discriminating between policyholders with physical and psychological impairments when such a distinction is not supported by the language of the policy.  As was the case in Colby I, the deterrent value of a fee award is considerable.  As in Colby I, the fourth factor reinforces the third: policyholders benefit from plan administrators' equal treatment of claims arising from physical and mental disabilities.  To the extent the Court's holding alters USIC's approach to claims of mental disability generally and drug addiction in particular, all of USIC's policyholders stand to benefit.

42

Over seven years, Dr. Colby has filed four administrative appeals and has sought relief in this Court twice in order that USIC would evaluate her claim for disability benefits thoroughly and in good faith.  Dr. Colby ought not be the party to bear the burden of USIC's principled stand.  Consequently, the Court orders that USIC pay Dr. Colby reasonable attorneys' fees and costs incurred from February 23, 2009, the date of the <u>Colby I</u> decision, until the present.  The Court orders that the parties confer and, if possible, file a joint proposed order regarding the extent of attorneys' fees and costs that USIC will pay to Dr. Colby.

## IV.   CONCLUSION

For the reasons stated, the Court, in its Order dated September 30, 2011, GRANTED Dr. Colby's Motion for Summary Judgment on the Record, DENIED USIC's Cross Motion for Summary Judgment on the Record, and entered judgment for Dr. Colby as to Counts I and II of Dr. Colby's First Amended Complaint.

Specifically, this Court ordered that:

(1) Dr. Colby is awarded thirty-six months of retroactively reinstated LTD benefits pursuant to the Plan less any benefits already received, and

(2) USIC shall pay Dr. Colby for the reasonable attorneys'
fees and costs incurred from February 23, 2009, until the
present.


                             /s/ William G. Young
                            **WILLIAM G. YOUNG**
                            **DISTRICT JUDGE**